[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO REARGUE
On September 13, 1999, the court held a hearing on the defendant's (mother) motion to modify a stipulation dated January 20, 1998, regarding the custody and visitation of their two minor children: Rebecca E. Dooley, date of birth August 5, 1988, age 11; and Alexander S. Dooley, date of birth August 7, 1990, age 9. She urged the court to grant her sole legal and physical custody with permission to relocate them from Salisbury, Connecticut, to Potomac, Maryland. The plaintiff (father), acting pro se, received notice of the hearing, failed to appear, and was defaulted. The defendant's testimony and her reasons for relocating to Maryland, were reasonable and legitimate. Her reasons for requesting sole legal and physical custody were likewise legitimate and reasonable. It further found it to be in the best interests of the children to grant her sole legal and physical custody pursuant to § 46b-56 of the Connecticut General Statutes, and in accordance with Ireland v. Ireland,246 Conn. 413 (1998). In approving the motion, the court also considered the recommendations offered by the attorney for the children to grant the motion, including an increase in the visitation to the plaintiff (father). The defendant agreed to the visitation orders which included her paying for a round trip airplane ticket each month and the purchase of an automobile for the plaintiff to visit the children in Maryland.
The plaintiff, through counsel, filed a motion to reargue these orders entered on September 13, 1999, which this court granted on October 25, 1999. It was to give the plaintiff the opportunity to present evidence of why it was not in the best interests of the children to relocate to Maryland, and to have granted the defendant sole legal and physical custody. Ireland v. Ireland,
supra.
The hearings were held on November 17, 1999 and January 4, 2000. The plaintiff's testimony consisted primarily of claims that the defendant's attorney and the attorney for the minor children had made misrepresentations to the court at the September 13th hearing. The only evidence he introduced were letters from the children expressing their desire to return to Salisbury, Connecticut.
On January 4, 2000, the attorney for the plaintiff requested permission to withdraw which the court granted after the plaintiff agreed to waive counsel and proceed with the hearing pro se. CT Page 1695
Some of the background facts may shed some light on this continued struggle over the custody and visitation orders involving these children, which have taken place over the past seven years. The parties were divorced on June 11, 1993 when custody and visitation orders were entered (West, J.). Since that time, the parties have litigated these issues before five different judges in this court, and two Family Relations studies have been prepared and filed. On June 2, 1997, Attorney Sharon Dornfeld was appointed attorney for the minor children and, through her efforts, the parties entered into a comprehensive eight page agreement on January 20, 1998 to resolve the custody and visitation issues by sharing joint legal and physical custody of the children. Shortly thereafter, the plaintiff moved his residence from Danbury to Salisbury, Connecticut, a distance of 58 miles. The original judgment prohibited either parent to move more than 60 miles from Danbury. In order for the shared physical custody to work, the defendant moved her residence to Salisbury. The move to Salisbury made matters worse for these children. The plaintiff was out of a job for sometime thereafter, and he was having difficulty paying his rent. He lived across from the White Hart Inn and began frequenting the bar room there. There were times that these children would be in this bar room with their father. He had been arrested for several motor vehicle offenses, and when he failed to appear in court, the State Police attempted to serve him with rearrest warrants. These children became aware of these legal difficulties and they tried to protect him. He was also being sued by his landlord for nonpayment of rent. These problems led to a modification of the January 20, 1998 orders.
On March 20, 1999, after a hearing before Judge Owens, the following orders were entered:
1. In the event the plaintiff is evicted from his current premises, he shall arrange placement of the two minor children with the defendant.
2. The plaintiff minimize his contact with law enforcement officials in the presence of the minor children.
3. The plaintiff shall immediately resume treating with James Wolff, an alcohol therapist at Danbury Hospital concerning his chemical dependence.
The plaintiff had frequented the bar at the White Hart Inn CT Page 1696 across the street from his home in Salisbury. The court believed it was in the children's best interest that the plaintiff not frequent the bar with him at the White Hart Inn, and specifically precluded his frequenting said place as a condition of his continued physical custody of the two minor children.
After reviewing the file of the Superior Court Housing Session in Bantam, the court finds the plaintiff was evicted from his Salisbury home. Subsequently, he arranged to place the two children in the physical custody of the defendant, and then he moved to another residence in Millerton, New York. He admitted in his testimony of failure to resume alcohol dependency treatment with James Wolff as ordered by Judge Owens.
On April 26, 1999, the visitation orders were again modified by Judge Moraghan limiting his visitation with the children to Thursday and Friday from after school until 8:30 p. m., and Sunday after church until 7 p. m. Judge Moraghan further ordered him not to drink during his visitation with the children or visitation would be revoked.
The court has considered all the testimony offered over the four days of hearings on all motions, and reviewed the exhibits introduced, as well as the criteria set forth in Ireland v.Ireland, supra, and finds the testimony of the defendant credible and probative. As the custodial parent, she has met her burden of proof that her relocating to Maryland was in the best interests of these minor children. She has agreed to an increase in plaintiff's visitation. She conceded the children love and want to visit with him. She is willing to assist him financially to visit with them in Potomac, Maryland. The court finds her relocation was for a reasonable and legitimate purpose based on the following facts:
1. She can continue working as vice-president of Fleet Bank primarily from her home there.
2. The schools in Potomac offer more opportunities for the children to receive a broader and better education.
3. She has purchased a town house in Potomac adequate to meet all their needs. This will provide the children with a stable environment and a sense of performance which they have not had over the past two years. CT Page 1697
4. The children will be able to visit and interact more with relatives by living in Potomac because these relatives come there more often than they would to Salisbury.
5. There are more cultural and education resources in the Potomac region which would benefit the children.
6. Over the past two years, the defendant has developed a meaningful relationship with a Dr. William Wren, a Colonel in the U.S. Army in charge of ophthalmology at Walter Reed Hospital, and they plan to marry within the next two years. The children know and interact well with him. The plaintiff has offered minimal evidence that it would be in the best interests of the children to be returned to Salisbury. In fact, there is no residence there where they could return to since the plaintiff now resides in Millerton, New York. The only exhibits he introduced were two letters from the children stating their desire to return to Salisbury. The court believes the plaintiff urged them to write them to influence the court, and he admitted showing them the transcripts from these hearings. These letters reflect their immaturity at ages 11 and 9 to make an intelligent preference. See § 46b-56 of the Connecticut General Statutes.
The evidence was overwhelming that the defendant is the more responsible and stable person to be granted sole legal and physical custody of these children. The court has considered all the criteria in § 46b-56 of the Connecticut General Statutes in granting her custody.
The plaintiff's motion to reargue is denied.
The court reaffirms the orders entered on September 13, 1999, when it granted the defendant's motion for sole legal and physical custody of the minor children and permission to relocate with them to Potomac, Maryland.
Romeo G. Petroni, Judge Trial Referee CT Page 1698